UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.** **Case No. 22-CR-162**

**MICHAEL T. SHELTON, JR.,**

**Defendant.**

---

## RECOMMENDATION AND ORDER

---

### 1. Procedural History

Wisconsin Department of Corrections agents, along with Milwaukee Police officers, searched Michael T. Shelton, Jr.'s home on September 2, 2020. Because Shelton was on extended supervision for an earlier attempted murder conviction, under what is colloquially referred to as Act 79 his residence and property were subject to search "by a law enforcement officer at any time … if the officer reasonably suspects that the person is committing, is about to commit, or has committed a crime or a violation of a condition of release to extended supervision." *See, e.g.*, Wis. Stat. § 302.113(7r). Officers discovered two handguns, hundreds of rounds of ammunition, and over two kilograms of marijuana. (ECF No. 29 at 9-12.)

Act 79 authorizes law enforcement to conduct searches of property controlled by persons on extended supervision. *See* Wis. Stat. § 302.113(7r). Persons on extended supervision are separately subject to search by corrections officials. *See* Wis. Admin. DOC § 328.22. As presented in the parties' briefs, there were two legally distinct searches. Initially, corrections officials searched portions of Shelton's home and found contraband. Police officers then conducted a further search and recovered the contraband.

In his brief Shelton refers to the initial search as an "Act 79 search" and the latter as a "police search." (ECF No. 30 at 29.) An Act 79 search is necessarily a police search. The initial search was a corrections search. The distinction, however, is of little consequence because, whether pursuant to his rules of supervision or Act 79, a search is lawful only if supported by reasonable suspicion. An Act 79 search is permissible if a law enforcement officer "reasonably suspects that the person is committing, is about to commit, or has committed a crime or a violation of a condition of release to extended supervision." Wis. Stat. § 302.113(7r). Corrections officials are permitted to conduct a search if they have "reasonable grounds to believe the offender possesses contraband or evidence of a rule violation on or within his or her person or property." Wis. Admin. DOC § 328.22(2)(a).

The grand jury subsequently returned an indictment charging that Shelton, as an armed career criminal, possessed a firearm and ammunition after having been

convicted of a felony, possessed marijuana with intent to distribute it, and possessed a firearm in furtherance of a drug trafficking offense. (ECF No. 1.)

Shelton has moved to suppress the evidence discovered in the search of his home. (ECF No. 29.) He argues that officers lacked reasonable suspicion to conduct a search and the search was not conducted in a reasonable manner. Shelton also argues that evidence obtained pursuant to two subsequent search warrants must be suppressed under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). (ECF No. 30.)

**2. Request for an Evidentiary Hearing**

Shelton requested an evidentiary hearing with respect to his motion to suppress evidence seized from his home. The government did not timely respond to Shelton's request for an evidentiary hearing. *See* Crim. L.R. 12(c) (requiring any opposition to a request for an evidentiary hearing to be filed within three days). Absent a response, ordinarily the court would grant the defendant's request for an evidentiary hearing as unopposed.

However, in his motion Shelton failed to show that an evidentiary hearing is necessary. Criminal Local Rule 12(c) requires the movant to set forth in his request for an evidentiary hearing "a description of the material disputed facts that the movant claims require an evidentiary hearing." Shelton identified the disputes requiring an evidentiary hearing as:

> (1) whether the uncorroborated tip from an unnamed, unknown informant lacked veracity, reliability and basis of knowledge such that

> Department of Corrections Agents and Milwaukee Police Officers lacked reasonable suspicion to justify the warrantless seizure of Shelton and search of his residence …
> (2) whether he [sic] search of Shelton's residence was not conducted in a reasonable manner and was arbitrary, capricious, and harassing in violation of Act 79 and the Fourth Amendment
> (3) and whether Milwaukee Police Officers did not act reasonably in searching Shelton's residence without a warrant.

(ECF No. 29 at 2-3.)

But that merely identifies the ultimate legal questions the court must resolve. Whether corrections officials and police officers had reasonable suspicion for the search depends on what they knew when they began the search. And whether the search was conducted in a reasonable manner depends on what the officers did during the search. Shelton has not identified any facts that are in dispute as to what the officers knew or how they conducted their search. Because Shelton has failed to identify any disputed facts that require an evidentiary hearing, his request for an evidentiary hearing ordinarily would be denied.

However, the court needs some facts to resolve the motion to suppress. Shelton presented an "Apprehension Request" (ECF No. 29-2) and a "Community Corrections Home Search Plan." He asserts that the entirety of the officials' knowledge prior to the search is contained in this Search Plan form. He states, "The tip is stated verbatim below as set forth in the Community Corrections Home Search Plan" (ECF No. 29 at 4):

> WITNESS STATED THAT EVER SINCE CLIENT WAS PLACED ON GPS MONITORING THROUGH HOC, THERE HAS BEEN A LOT OF ACTIVITY TAKING PLACE AT HIS RESIDENCE WHICH APPEARS TO

> BE DRUG RELATED. CLIENT HAS BEEN OBSERVED EXITING AND ENTERING THE BACK DOOR OF HIS RESIDENCE CARRYING A GUCCI OR LOUIS VUITTON MAN BAG WHICH THE WITNESS BELIEVES TO BE CARRYING DRUGS AND MONEY. DURING A CONVERSATION WITH THE CLIENT, THE WITNESS OBSERVED AN EXTENDED CLIP IN CLIENTS RIGHT POCKET. WHILE DISCUSSING THE RASH OF BREAK INS THAT HAVE BEEN OCCURING [sic] IN THEIR NEIGHBORHOOD, THE WITNESS STATED THAT CLIENT PATTED HIS POCKET WHERE THE EXTENDED CLIP WAS AND STATED, "THAT'S WHY I KEEP PROTECTION ON ME."

(ECF No. 29-1 at 2.) Contrary to Shelton's assertion that this was the "tip … verbatim," these are not the words of the witness; rather, they reflect a corrections official's summary of the circumstances that led to the search. This paragraph does not necessarily reflect the extent of the "tip," nor does it say that the information was received only from the witness.

The government provided the court with Shelton's Rules of Supervision (ECF No. 35-1) and over two-and-a-half hours of a police officer's bodycam recording. The parties' briefs also contain many factual assertions, most of which are unsupported. It is unclear which, if any, are disputed.

The record presently before the court is insufficient to permit it to resolve the motion to suppress. Contrary to the government's assertion, *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987), does not establish that the search of Shelton's home was lawful. At issue in *Griffin* was the broad question of whether the search of a probationer based on reasonable suspicion was consistent with the Fourth Amendment. It held that it was. *Id.* at 880. In so holding, however, the Court did not spend much time assessing whether

the specific facts of the case added up to reasonable suspicion. The only facts included in the Court's decision were that a probation officer "received information from a detective on the Beloit Police Department that there were or might be guns in Griffin's apartment." *Id.* at 871; *see also State v. Griffin*, 131 Wis. 2d 41, 46, 388 N.W.2d 535, 536 (1986) (stating a detective contacted probation and parole officials and said the defendant "may have had guns in his apartment"). What was most significant to the Court was that the information justifying the search came from a police officer. *Id.* at 879-80.

The government does not argue that it was a police officer who provided corrections officials the relevant information justifying the search of Shelton's home. In fact, the parties seem to agree that the witness who provided information to corrections officials was anonymous (ECF Nos. 29 at 24, 33; 35 at 10-11), although the Community Corrections Home Search Plan does not specifically say that. The fact that the witness is not identified in the Plan does not mean he or she was unknown to corrections officials. And even if the witness did not provide his or her name, witnesses routinely provide details that lend credibility to their tip or that would enable law enforcement to know who the tipster was. Yet such details are commonly omitted from official reports lest the target be able to identify the tipster.

It is also unclear who received the information from the witness, when it was received, if the statement quoted above reflects every detail the witness provided, and if

certain details were added by whoever wrote the Search Plan. For example, if the witness reported that Shelton was on GPS monitoring through the House of Corrections, it would tend to suggest that the witness was closely familiar with Shelton.

The court also lacks enough facts to determine whether the search was conducted in a reasonable manner. The only bodycam video the court received is that of an officer who seems to have largely stayed in the living room of Shelton's home with the other residents of the home during the search. Shelton's brief refers to other bodycam footage, but apparently those videos did not record the whole search. (ECF No. 29 at 13.)

Therefore, the court finds that an evidentiary hearing is necessary to establish a factual basis for resolving Shelton's motion to suppress evidence seized from his home.

**3. Motion for *Franks* Hearing**

After the search of Shelton's home an officer obtained a warrant to search two cell phones that were seized from Shelton. An officer also obtained a search warrant to obtain Shelton's DNA, which they sought to match to the contraband seized from his home. Shelton argues that evidence seized pursuant to these warrants must be suppressed because they contained false statements and omissions.

A false statement or intentional omission in an application for a search warrant may support suppression of evidence obtained pursuant to that warrant if, but for the error or omission, probable cause would not have existed. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Commonly referred to as a *Franks* motion, suppression on this

basis requires a two-step process. First, the defendant must "make a substantial preliminary showing that: (1) the warrant affidavit contained false statements, (2) these false statements were made intentionally or with reckless disregard for the truth, and (3) the false statements were material to the finding of probable cause." *United States v. Mullins*, 803 F.3d 858, 861-62 (7th Cir. 2015).

Only if the defendant makes this substantial preliminary showing will the motion proceed to the second step—an evidentiary hearing, commonly referred to as a *Franks* hearing. At a *Franks* hearing, the defendant must show by a preponderance of the evidence "that the false statements or omissions were made intentionally or with reckless disregard for the truth, and without the false material the affidavit's remaining content is insufficient to establish probable cause." *Id.* at 862. "It is relatively difficult for a defendant to make the 'substantial preliminary showing' required under *Franks*. Allegations of negligent or innocent mistakes do not entitle a defendant to a hearing, nor do conclusory allegations of deliberately or recklessly false information." *United States v. McMurtrey*, 704 F.3d 502, 509 (7th Cir. 2013).

The search warrant issued for Shelton's DNA contains an obvious error. In paragraph nine the affiant states:

> Affiant knows that genetic material may be obtained from the firearm *and the packaging that the heroin was recovered in as described in paragraph 2*, and that efforts to do so have or will occur by qualified law enforcement officers, and said material can be subsequently determined to be consistent or inconsistent with the genetic material of Michael T. SHELTON.

(ECF No. 30-1 at 4 (emphasis added).) No heroin was recovered in the search of Shelton's home, and the affidavit does not otherwise refer to heroin. Paragraph two does not refer to the recovery of any drugs but states merely the date, time, and general circumstances of the search.

But identifying an error is only the first preliminary showing required of a defendant in the *Franks* analysis. The defendant must then demonstrate that the error was made intentionally or with reckless disregard for the truth and was material to the probable cause determination. An error is material if the defendant can show that, but for the error, probable cause would not have existed.

The errant reference to heroin in the affidavit is so obviously immaterial to the existence of probable cause to search for Shelton's DNA that this aspect of Shelton's *Franks* argument is clearly without merit. Not every typo or inattentive copy and paste in a search warrant affidavit merits a *Franks* motion. *See United States v. Swanson*, 210 F.3d 788, 791 (7th Cir. 2000). Shelton's only attempt to show that the reference to heroin was made with the requisite state of mind is to baldly assert, "A claim of heroin when no evidence of heroin was found demonstrates that [the affiant] had a subjective intent to deceive." (ECF No. 41 at 3.) But simply pointing to a mistake in the affidavit, without more, does not establish that the affiant had the requisite intent to deceive.

Probable cause for the search for Shelton's DNA in no way depended on the isolated errant refence to heroin. Had the affidavit correctly referred to marijuana

instead of heroin it would have all the same established probable cause to obtain Shelton's DNA. Even if the reference to drugs and packaging material had been omitted altogether, and paragraph nine had simply included the averment that genetic material can be recovered from firearms and matched to a particular individual, there still would have been probable cause to obtain Shelton's DNA.

Shelton also argues that the DNA warrant and warrant for his cell phones improperly omitted that the facts set forth in the affidavits regarding the search of Shelton's home were based on "an uncorroborated unverified tip from an anonymous informant to a Department of Corrections Agent Heather Wood and that no independent investigation of the tip was conducted before the execution of the search to corroborate the claims in the tip." (ECF No. 30 at 5.) But, as noted above, the record does not establish that the warrant to search Shelton's home was based on an anonymous and uncorroborated tip. That is merely Shelton's take on the summary contained in the Search Plan. Even if the court were to accept Shelton's position on that point, he has failed to make the preliminary showing that the omission was made intentionally or with reckless disregard for the truth. The affiant, a police officer who assisted in the search of Shelton's home at the request of corrections officials, would not necessarily be expected to know the circumstances that led the corrections officials to decide to search the home. Most significantly, this aspect of Shelton's *Franks* motion is subsumed in his other motion to suppress.

Case 2:22-cr-00162-PP-WED Filed 03/03/23 Page 10 of 12 Document 42

Because Shelton's arguments regarding the mistaken reference to heroin are without merit, his *Franks* motion depends on him showing that the search of his home was based on an uncorroborated anonymous tip. Omission of that detail was material to the subsequent warrants only if it meant that the search of Shelton's home was unlawful. But if the search of Shelton's home was unlawful, then the seizures of his cell phones and the firearm on which his DNA was found were unlawful and that evidence would be suppressed. If the phones and the firearm are suppressed, the lawfulness of the warrant authorizing a subsequent search of those phones or for the collection of DNA to connect Shelton to possession of that firearm becomes immaterial.

On the other hand, if the search of Shelton's home was lawful, then it was immaterial for the affiant to omit the circumstances that led to the search. Thus, Shelton has failed to show that there is any basis for a *Franks* hearing or suppression under *Franks*.

**IT IS THEREFORE ORDERED** that Shelton's request for an evidentiary hearing regarding his motion to suppress (ECF No. 29) is **granted**. The Clerk shall schedule a hearing.

**IT IS FURTHER RECOMMENDED** that Shelton's second motion to suppress (ECF No. 30) be **denied**.

**IT IS FURTHER ORDERED** that, in accordance 28 U.S.C. § 636(b)(1)(A), (B) and (C) and Fed. R. Crim. P. 59(a) and (b)(2), written objections to any order or

recommendation herein or part thereof shall be filed within fourteen days of the date of service of this recommendation and order or prior to the Final Pretrial Conference, whichever is earlier. Failure to file a timely objection with the district court will result in a waiver of a party's right to review.

Dated at Milwaukee, Wisconsin this 3rd day of March, 2023.

WILLIAM E. DUFFIN
U.S. Magistrate Judge