UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

        Case No. 22-cr-162-pp

MICHAEL T. SHELTON, JR.,

        Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO REOPEN RECORD OF SUPPRESSION HEARING (DKT. NO. 76)

On August 9, 2022, following a search of the defendant's residence by probation agents and law enforcement, a grand jury returned a three-count indictment charging the defendant with being a prohibited person in possession of a firearm, possessing with intent to distribute marijuana and possessing a firearm in furtherance of a drug trafficking offense. Dkt. Nos. 1. On January 10, 2023, the defendant filed a motion to suppress evidence obtained during the search of his residence. Dkt. No. 29. The defendant argued that the tip received from his neighbor was not sufficient to create reasonable suspicion to search the residence, that the search was not conducted in a reasonable manner and that the Milwaukee police officers did not act reasonably in searching the residence without a warrant. Id. The defendant requested an evidentiary hearing be held. Id.

On March 27, 2023, Magistrate Judge William E. Duffin held an evidentiary hearing, where he heard testimony from Debra Rozier (a field supervisor for the Wisconsin Department of Corrections), Agent Jason Luebke

1

(a probation and parole agent who participated in the search of the residence), and Sgt. Justin Schwarzhuber (a Milwaukee police officer who participated in the search). Dkt. Nos. 47; 54 at 14-23. On May 3, 2023, Judge Duffin recommended that this court deny the motion to suppress. Dkt. No. 51. The defendant filed an objection to Judge Duffin's report and recommendation, dkt. no. 52, and the government responded asking the court to overrule the objection, dkt. no. 53.

On August 2, 2023, this court issued an order adopting Judge Duffin's report and recommendation, overruling the defendant's objection and denying the motion to suppress. Dkt. No. 54. The court explained that it "must consider whether [] a search [by police officers] was conducted in a 'reasonable manner,' ensuring that it was not 'arbitrary, capricious, or harassing.'" Id. at 64 (quoting United States v. Johnson, No. 20-cr-214, 2022 WL 102277, at *7 (E.D. Wis. Jan. 11, 2022)). The court concluded:

> There is no evidence in the record that the search—either by the corrections officers or by law enforcement—was harassing. The defendant was taken into custody under an apprehension warrant; it appears that the search happened after he was arrested and that other people in the residence were undisturbed by it. There is no evidence in the record that the search was arbitrary. The court has discussed *ad nauseum* the reason the corrections officers conducted their search—a report from a neighbor that the defendant had an extended magazine—and the reason for the law enforcement officers' search—because the corrections officers found contraband. For the same reason, the searches were not capricious.

Id. The court summarized by saying "[t]here is no evidence that the search was not reasonable, or that it was harassing, arbitrary or capricious." Id. at 65.

2

On December 15, 2023, the defendant filed a motion to reopen the record of suppression hearing so he may present additional evidence.[1] Dkt. No. 76. The government opposes that motion. Dkt. No. 79. Because the evidence the defendant wishes to present—body camera footage of a portion of the search—is not new evidence and, more critically, does not call into question the credibility of one of the witnesses at the hearing, the court will deny the defendant's motion to reopen the record.

I. **Legal Standard**

The Seventh Circuit Court of Appeals has held that the decision whether to reopen the record of a suppression hearing "lies within the sound discretion

---

[1] On December 15, 2023, the defendant's attorney filed the motion to reopen the record of the suppression hearing. Dkt. No. 76. On December 22, the court received a letter directly from the defendant. Dkt. No. 77. On December 29, 2023, the court received a second letter directly from the defendant. Dkt. No. 78. "A defendant does not have a right to represent himself when he is also represented by counsel." United States v. Cross, 962 F.3d 892, 899 (7th Cir. 2020) (citing United States v. Patterson, 576 F.3d 431, 436 (7th Cir. 2009)). The defendant wrote at the top of both letters, "(Letter not Motion)," presumably because he thought calling his filings "letters," instead of calling them "motions," would avoid the prohibition against representing himself while he is represented by counsel. But any document that asks a court to do something is a motion, regardless of what the person filing it may call it, and a party "has no right to file a pro se brief *or* motion in any court while counsel represents him." United States v. Rollins, 309 F. App'x 37, 38 (7th Cir. 2009) (citation omitted). The defendant's first letter asks the court to read a police report and watch body camera footage and makes arguments. Dkt. No. 77. The second letter asks the court to compare a probation officer's statement with body camera footage. Dkt. No. 78. These are motions—which the defendant does not have a right to file while he is represented. As for the defendant's contention that he perceives that the court believed he was trying to fire his lawyers to waste time, dkt. no. 77, that was not the court's perception. The court must advise parties who wish to terminate their lawyers that that decision will have an impact on how quickly their case is resolved. The court is well aware that the defendant strongly believes that the video constitutes evidence that the people who searched his residence said one thing but did another.

3

of the district court." United States v. Ozuna, 561 F.3d 728, 734 (7th Cir. 2009). In Ozuna, the appellate court "decline[d] to impose a justification requirement to reopen a suppression hearing" or establish "a bright-line rule." Id. at 734-35. It reasoned that "adopting a more flexible approach protects society's interest in ensuring a complete proceeding where the court considers all relevant, constitutionally obtained evidence," while also allowing the court to consider whether a party "is wasting judicial resources or proceeding in a way that is unfair" to the opposing party. Id. at 734. The Ozuna court determined that "'a district court should be permitted, in the exercise of its discretion and in light of the totality of the circumstances, to determine whether its suppression ruling should stand.'" Id. at 735 (quoting In re Terrorist Bombings of the U.S. Embassies in E. Afr., 552 F.3d 177, 196 (2d Cir. 2008)).

Although the Ozuna court declined to set a bright-line rule, the Seventh Circuit's other precedent provides guidance for what may be appropriate grounds for a district court reopening the record of a suppression hearing. Id. For example, the court "has generally given wide latitude to district courts to reopen suppression hearings for consideration of newly obtained evidence." Id. at 734 (citing United States v. Scott, 19 F.3d 1238, 1243 (7th Cir.1994); United States v. Duran, 957 F.2d 499, 505–06 (7th Cir.1992)). That said, the court also has concluded a district court may, in its discretion, reopen a suppression hearing even where the evidence was previously available. Id. at 735-36 (affirming the district court reopening the record of a suppression ruling, despite the government having the disputed handwriting sample before the suppression hearing).

The Seventh Circuit has "noted that reopening a suppression hearing may be appropriate when the proffered evidence calls the credibility of a

4

witness into question." Id. at 735 (citing Scott, 19 F.3d at 1243; Duran, 957 F.2d at 506). The Ozuna court followed this reasoning in affirming a district court's decision to reopen the record of a suppression hearing so that the government could provide additional expert testimony, agreeing that the "information would assist the district court in determining whose version of the search to believe, resulting in a more accurate ruling on the motion to suppress." Id. at 736. The Ozuna court observed that "the handwriting comparison testimony had a direct bearing on Ozuna's credibility" and that "[i]f this testimony showed that he had, in fact, signed the consent form, it would mean that he had perjured himself at the previous hearing." Id. at 735-36. The Ozuna court implied that the handwriting testimony could significantly affect the district court's credibility determination.

## II. Parties Arguments

### A. The Defendant's Brief in Support (Dkt. No. 76)

The defendant moves to reopen the record of the evidentiary hearing on the motion to suppress so that he may present additional evidence. Dkt. No. 76 at ¶¶A-B. The defendant seeks to offer the bodycam footage of Officer Martinese McDaniel—whom the defendant says "was apparently involved in the initial Act 79 search." Id. at ¶¶5, A. The defendant claims that Officer McDaniel's bodycam footage contradicts some of Agent Luebke's testimony regarding where ammunition was found in the defendant's bedroom. Id. at ¶¶3-8. The defendant argues that Luebke's testimony, when viewed in conjunction with Exhibit 2 (a photo showing a box of ammunition on the defendant's mattress), "suggests" that Luebke found the ammunition on the defendant's mattress. Id. at ¶4. The defendant asserts, however, that McDaniel's bodycam footage does not show the box of ammunition on the mattress. Id. at ¶6-7. Specifically, the

5

defendant contends that "[a]t time mark 8:42 [McDaniel] is in [the defendant]'s bedroom, and it can be seen that there is nothing on the mattress where PO Luebke claimed to have found the two boxes of cartridges." Id. at ¶6. Based on this, the defendant argues that "[t]he only inference is that the boxes of ammunition were found elsewhere in the house, and placed on the mattress when they were photographed." Id. at ¶7.

Similarly, the defendant claims that McDaniel's bodycam footage conflicts with a photo that was turned over to the defense in discovery but was not presented as evidence at the suppression hearing—a photo depicting "boxes of ammunition placed near a water bottle and a red book on the bed-rail." Id. at ¶8. The defendant asserts that McDaniel's bodycam footage does not show ammunition boxes "on the bed-rail near the red book," and infers "that the ammunition was found elsewhere, and probably not in [the defendant]'s bedroom." Id.

Explaining that McDaniel's bodycam footage was not shown at the suppression hearing, the defendant argues that the footage is relevant to the issues addressed at the hearing. Id. at ¶9-10. The defendant states that "[a]n Act 79 search must be conducted in a 'reasonable manner,' ensuring that it was not 'arbitrary, capricious, or harassing.'" Id. at ¶10 (quoting Johnson, 2022 WL 102277, at *7). The defendant concludes that whether "the agents and the police officers located contraband in another part of the house and placed it in Shelton's bedroom as though that is where it was found . . . is . . . relevant in the suppression hearing on the issue of whether the search was conducted in a reasonable manner." Id. at ¶11.

6

B.  The Government's Brief in Opposition (Dkt. No. 79)

The government argues that the defendant's motion is "without factual or legal merit." Dkt. No. 79 at 1. It asserts that "[t]he decision to reopen an evidentiary hearing lies within the sound discretion of the district court and there are a limited grounds under which they should be permitted." Id. at 3. It recounts that these grounds include situations "where there is evidence that directly calls into question a witness' credibility" or "where there is new evidence." Id. at 3-4 (citing United States v. Duran, 957 F.2d 499 (7th Cir. 1992); United States v. Lucas, 379 F. Supp. 3d 182, 188 (W.D.N.Y. 2019)). The government urges the court to consider whether the proposed additional evidence "is of material significance" to the issues raised in the hearing and argues that "[i]f the proffered new evidence fails to impact the core findings of the suppression hearing, a court is well within its discretion to deny the request to reopen a hearing." Id. at 4 (citing United States v. Oliver, 626 F.2d 254, 260 (2d Cir. 1980); Lucas, 379 F. Supp. 3d at 189).

The government maintains that the court should deny the motion because the video evidence is not new, does not call into question a witness's credibility and has no bearing on the ultimate issues addressed at the hearing. Id. at 4-8. The government argues that "[t]he defendant's motion merely points to images and body camera footage that the defendant was in possession of months prior to the hearing." Id. at 4. It contends that "[s]imply because the defendant has now latched onto a new theory of suppression and reviewed a video that he believes supports it, does not merit re-opening the evidentiary hearing." Id. The government contends that "nothing in the defendant's motion, nor his attachments, supports his speculative allegation that Agent Luebke testified untruthfully." Id. It asserts that the defendant mischaracterizes

7

Luebke's testimony, which the government claims mentioned only that the boxes of ammunition were found in the defendant's bedroom, not on his mattress. Id. at 4-7. The plaintiff attached a portion of Luebke's testimony describing the search of the defendant's bedroom:

> [A.] On the east wall that's the wall with the windows. There was an assortment of clothes, there was some loose ammunition on the same dresser as that safe. Towards the east, towards that wall with the window observed in the open a green packaging with printing on it that when we put light on it indicated that they were packaged firearm rounds, 10:23 rifle rounds.
> Q. Directing your attention to Exhibit No. 2, do you recognize what's depicted in that image?
> A. In Exhibit 2 the packaging of the rounds in the green item are pictured. There is also two boxes of ammunition that were observed and recovered in that same room.
> Q. And does Exhibit No. 2 accurately depict the green cartridge bag that you previously testified about?
> A. Yes, ma'am.

Id. at 79.

The government states that "the unfounded allegations the defendant makes in his motion to reopen the evidentiary record have no bearing on the ultimate issues in this case" because "[t]here were numerous individual items of contraband in the defendant's bedroom that were observed during the lawfully executed probation search, aside from the boxes of ammunition that the defendant now takes issue with." Id. at 7. The plaintiff argues that "[t]he defendant's motion does not take issue with any of the other prohibited contraband that was recovered in that bedroom and thus nothing in the defendant's motion is remotely dispositive to change the outcome of the court's findings." Id.

8

### III. Analysis

The court agrees with the government's statement that "the evidence that the defendant seeks to admit is certainly not new[,]" dkt. no. 79 at 4, but this fact alone is not dispositive. As discussed above, the Seventh Circuit has affirmed a district court's decision to reopen a suppression hearing even when the evidence the offering party wished to present had previously been available to the offering party. See Ozuna, 561 F.3d at 735-36. The court also must consider whether the evidence the defendant wants to present calls into question the credibility of a witness who testified at the evidentiary hearing.

The defendant asserts Luebke testified that when he entered the defendant's bedroom, he saw in the open green packaging that, when a light was shone on it, indicated that it contained prepackaged ammunition. Dkt. No. 76 at ¶4. The defendant says that "[a]t that point in the testimony, Exhibit 2, a photograph of the ammunition, was received into evidence." Id. The defendant asserts that the photo in Exhibit 2 showed "two boxes of ammunition and a plastic bag sitting atop a bare mattress purportedly in [the defendant's] bedroom." Id. The defendant concludes from the fact that the photo in Exhibit 2 was introduced, and admitted into evidence, immediately after Luebke described what he'd seen, the combination of Luebke's testimony and the photo "suggests that this is where the ammunition was found." Id. The defendant maintains that McDaniel's bodycam footage contradicts this "suggestion," showing that "there is nothing on the mattress where PO Luebke claimed to have found the two boxes of cartridges." Id. at ¶¶6. The defendant asserts that "[t]he only inference is that the boxes of ammunition were found elsewhere in the house, and placed on the mattress when they were photographed" and that

9

"the inference is that the ammunition was found elsewhere, and probably not in [the defendant]'s bedroom." Id. at ¶7-8.

The problem with this argument is that Luebke never testified that he found the ammunition box on the defendant's mattress. He testified that "[t]owards the east, towards that wall with the window observed in the open a green packaging with printing on it that when we put light on it indicated that they were packaged firearm rounds, rifle rounds." Dkt. No. 47 at 59, lines 22-25. Nor did Luebke testify that the photo in Exhibit 2 showed where he found the ammunition. He testified that Exhibit 2 depicted "the packaging of the rounds in the green item . . . [and] also two boxes of ammunition that were observed and recovered in that same room." Id. at 60, lines 3-5. Because Luebke did not testify that the ammunition was found on the mattress, McDaniel's body camera footage showing the mattress with no ammunition on it does not call into question Luebke's credibility.

The defendant argues that because McDaniel's bodycam footage does not show the ammunition box on the mattress, the only possible inference the court can draw is that "the ammunition was found elsewhere, and *probably not* in [the defendant]'s bedroom." Dkt. No. 76 at ¶8 (emphasis added). The ammunition probably *was* found somewhere other than the mattress, given that Luebke didn't testify it was found on the mattress. But the defendant's insistence that this fact demands the conclusion that the ammunition wasn't found in the defendant's bedroom is a bridge too far. Luebke *did* testify, under oath, that he found the ammunition in the defendant's bedroom, and Officer McDaniel's bodycam footage does not refute that testimony.

Finally, although the defendant had no right to file motions on his own behalf while represented by counsel, the court observes that he filed a copy of a

10

revocation summary prepared by Heather Wood. Dkt. No. 78-1. Heather Wood was the defendant's supervising agent; she was the person who received a tip in September 2020 that the defendant was violating his supervision. Dkt. No. 54 at 15. The defendant highlights a sentence in Wood's revocation summary, in which she says that "[u]pon entry into [the defendant's] bedroom, we immediately observed handgun ammunition and rifle ammunition at the end of the bed." Dkt. No. 78-1 at 2. The defendant asked the court to compare this statement with the video. Dkt. No. 78. But Heather Wood did not testify at the evidentiary hearing on the suppression motion. Her revocation summary was not admitted into evidence at the evidentiary hearing. The defendant's letter attempts to impeach the credibility of a witness who testified before the court under oath with an unsworn statement by an individual who did not testify. Wood's statement in her revocation summary does not call into question Luebke's credibility.

Finally, the defense attempts to link Luebke's credibility with the reasonableness of the search. Aside from the fact that the McDaniel video does not cast doubt on the credibility of Luebke's hearing testimony, the "reasonableness" of an Act 79 search is not based on the credibility of a witness testifying at a suppression hearing. Courts considering an Act 79 search must consider whether the search was conducted in a "reasonable" manner and must ensure that the search was not "arbitrary, capricious, or harassing." Dkt. No. 54 at 64 (quoting Johnson, 2022 WL 102277, at *7). If a witness gave false testimony at a suppression hearing about where he found certain evidence, that would not demonstrate that the search was *unreasonable*. It *might* impact the presiding judge's decision about whether there were sufficient facts to provide the police officers with reasonable

11

Case 2:22-cr-00162-PP   Filed 01/24/24   Page 11 of 12   Document 80

suspicion for their search. See United States v. Jackson, 300 F.3d 740, 749 (7th Cir. 2002). But Judge Duffin did not base his decision that the police officers had reasonable suspicion to search solely on the fact that corrections officials found ammunition (or where they found ammunition); he also based his conclusion that the police officers had reasonable suspicion on the fact that corrections officials found a *gun*. Dkt. No. 54 at 33, citing Dkt. No. 51 at 9-10.

There is no basis for the court to reopen the suppression hearing. The body camera footage is not "new," and it does not call Agent Luebke's credibility into question.

## IV. Conclusion

The court **DENIES** the defendant's motion to reopen the record of suppression hearing. Dkt. No. 76.

Dated in Milwaukee, Wisconsin this 24th day of January, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**